TRANSWESTERN PIPELINE COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Public Utilities Commission of the State of California, Williams Natural Gas Company, Southern California Gas Company, Western Resources, Inc., Intervenors.

No. 91–1307.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1993.

Decided March 19, 1993.

William J. Grealis, Washington, DC, for petitioner.

Joel M. Cockrell, Atty., F.E.R.C. with whom William S. Scherman, Gen. Counsel, and Jerome M. Feit, Washington, DC, Sol., F.E.R.C., were on the brief, for respondent.

Martin J. Bregman, Topeka, KS, for intervenor Western Resources, Inc.

Arocles Aguilar and Edward O'Neill, San Francisco, CA, entered appearances for intervenor Public Utilities Com'n of the State of Cal.

Douglas O. Waikart and Gregory Grady, Washington, DC, entered appearances for intervenor Williams Natural Gas Co.

Michael A. Cartelli and Woodrow D. Smith, Los Angeles, CA, entered appearances for intervenor Southern California Gas Co.

Before: WALD, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

■ Transwestern Pipeline Company petitions for review of a FERC order permitting Williams Natural Gas Company to unconditionally abandon its certified obligation to purchase gas from Transwestern. Petitioner asserts that FERC should hold Williams responsible for "its share" of Transwestern's take-or-pay costs incurred after Williams terminated its contractual relationship with Transwestern. We deny the petition.

I.

Section 7(c) of the Natural Gas Act requires natural gas companies to receive a certificate from FERC before they may sell or transport gas. 15 U.S.C. § 717f(c). A certificate creates two obligations, one on the part of the seller, and one on the part of the buyer. The seller must maintain the ability to supply the buyer with the amount of gas specified both in the certificate and in the seller's contract with the buyer. As

a corollary, the buyer is obliged to buy the gas from the seller.

The Natural Gas Act also requires that FERC review any attempt or agreement to terminate service under a certificate. "No natural gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission." *Id.* at § 717f(b). In 1988, in accordance with its general deregulatory policies, FERC promulgated rules that *inter alia* allowed automatic abandonment of service by purchasers either when their underlying contract had expired, or when they had terminated their purchases pursuant to contract or agreement. Order No. 490, 53 Fed.Reg. 4121 (Feb. 12, 1988) (codified at 18 C.F.R. § 157.21). The pertinent part of Order No. 490 states that:

> (a) ... a purchaser ... is authorized, upon 30–days written notice to (or from) the seller, or any longer notice period required by contract, to abandon purchases of natural gas from any first seller or pipeline: (1) Permanently, under a contract that has expired, or (2) To the extent that the obligation of the purchaser to take or pay for gas (or both), or of the seller to deliver gas, is unilaterally reduced, suspended or terminated by either party in accordance with a provision of an unexpired contract. *Id.*

The order also requires that the abandoning purchaser notify FERC within 30 days of the abandonment. In a change from previous policy, the new order does not require that FERC specifically authorize the abandonment, but instead permits abandonment automatically once a purchaser has satisfied the order's terms.

In the case before us, Transwestern and Williams entered into an agreement in 1986 to settle various rate and purchase obligation issues. The settlement also gave Williams the option of terminating its sales service agreement with Transwestern on February 1, 1989, 1990, or 1991, after one year's notice. Although the settlement did not refer to Transwestern's take-or-pay costs (under its contracts with producers)

or Williams' liability for those costs, Article XVII of the contract did provide that:

> [t]he provisions of this settlement are intended to relate only to specific matters referred to herein, and by agreeing to this settlement, no party waives any claim or right which it may otherwise have with respect to any matters not expressly provided for herein.

In accordance with the settlement, on February 1, 1988 Williams gave Transwestern one year's notice of its intent to abandon service. Only 11 days later, FERC issued Order No. 490 to take effect on April 12, 1988. On January 5, 1989, Transwestern filed both its application to abandon sales service to Williams, and—pursuant to Williams' request—an application on Williams' behalf to abandon Williams' purchase obligation. Transwestern also requested that FERC condition Williams' abandonment to allow Transwestern to continue to recover a share of its take-or-pay costs.

In October 1989, FERC rejected Transwestern's request to condition Williams' abandonment. The agency held that Williams had "already obtained unconditional authorization to abandon its purchases from Transwestern pursuant to [Order No. 490], and that the authorization is final." *Transwestern Pipeline Co.*, 49 F.E.R.C. ¶ 61,021 (1989). FERC decided that it lacked the authority to impose any conditions on Williams because as of February 1, 1989 Williams had abandoned unilaterally in accordance with both the 1986 settlement and Order No. 490. FERC then held that Williams' "compliance" with Order No. 490 made Williams' formal application for abandonment—filed on its behalf by Transwestern—moot because Transwestern had filed its petition less than one month before the February 1, 1989 abandonment date. In short, Transwestern's delay foreseeably led to FERC's not considering the case before Williams had effected its abandonment. With Transwestern's application for abandonment of its service obligation the only matter still before the Commission, FERC held that "Transwestern's abandonment authorization only applies to Transwestern, and any conditions

on that authorization would only bind Transwestern—not Williams who has not been a customer since February 1, 1989." *Id.*

Based on these findings, FERC decided that Williams was only liable for take-or-pay costs filed when still a Transwestern customer—up to February 1, 1989.[1] FERC denied Transwestern's petition for rehearing on April 30, 1991. This appeal followed.

## II.

Transwestern's underlying claim is that Williams should be held responsible for its share of the take-or-pay costs Transwestern incurred after February 1, 1989. These costs are attributed to amounts Transwestern was obliged to pay to buy-out, buydown, or reform long-term gas contracts with take-or-pay provisions that were entered into, in part, to provide service to Williams. Petitioner therefore argues that it was arbitrary and capricious for FERC to permit Williams to abandon its certified purchaser status without meeting its obligations as to these costs.

Although Transwestern approaches its claim from several different directions, it is important to note, at the outset, what is not at issue. Transwestern does not directly challenge Order No. 490. A petition for review of the order is currently before the Sixth Circuit in *Marathon Oil Co. v. FERC,* No. 88–3666, but no stay of the order was granted so we must assume its validity for purposes of this case. 15 U.S.C. § 717r(c). Nor does Transwestern challenge the propriety of applying Order No. 490 to the transactions in this case on retroactivity grounds. Transwestern does not argue that FERC could not properly determine that when Williams gave notice under the contract on February 1, 1988, it had "complied with the requirements of Order No. 490."[2] Order No. 490 did not

issue until February 12, 1988, and did not take effect until April 12 of that year, well after Williams had given notice.

Instead, Transwestern contends that Order No. 490 should not have governed FERC's decision. FERC assertedly misreads Transwestern's settlement agreement with Williams as authorizing Williams to discontinue purchases without liability for subsequent take-or-pay costs. And, even if Williams had no continuing *contract* obligation to share Transwestern's take-or-pay costs, FERC did have "jurisdiction" over Williams (at least until February 1, 1989, when the one-year notice period had expired) when Transwestern filed its petition for a conditional abandonment. FERC could, and therefore should, have recognized Transwestern's *regulatory* claim against Williams by conditioning the abandonment. Without overtly challenging Order No. 490, Transwestern nevertheless argues that FERC should make an individualized determination under the Natural Gas Act that any particular abandonment is justified by the public interest. According to Transwestern, abandonment here was not so justified—at least without a condition—because the resulting mismatch between cost incurrence and cost responsibility is contrary to FERC's traditional policy.

We turn first to the dispute over FERC's interpretation of the settlement agreement between Transwestern and Williams. It will be recalled that Order No. 490 permits automatic abandonment of the purchaser's certified duty to take gas if the purchaser's contract with the seller has expired or the purchaser has given notice, pursuant to the contract, to terminate its purchase obligation. Upon examination of Transwestern's petition, FERC observed that Williams had given the one year notice and that the purchaser's obligation had expired

---

1. In an earlier proceeding, the Commission had held that Williams also would remain liable for its share of take-or-pay costs arising from contracts in litigation as of March 31, 1989, because Transwestern had included a "litigation exception" in its tariff filings.

2. That is how FERC describes Williams' actions in its brief. From the context, it is apparent that FERC is referring to February 1, 1988, the date Williams gave the year's notice (although FERC's order is less clear). Order No. 490, issued subsequently, thereby gives a legal significance to that act, which it arguably did not have at the time it was taken.

by the time FERC considered the matter. The contract contained no provision that, on its face, contemplated any continuing obligation on Williams' part to pay for Transwestern's take-or-pay costs filed after February 1, 1989.[3] Accordingly, FERC determined that Williams met Order No. 490's criteria for automatic abandonment.

Transwestern argues that FERC's examination of the settlement agreement was too cursory. Although Transwestern concedes that there is no specific language in the agreement continuing Williams' liability, it points to the general reservation of rights clause set forth above. Transwestern contends that the clause preserves its claim because the settlement does not affect Transwestern's "right" to recover Williams' share of Transwestern's take-or-pay costs. Transwestern, however, does not identify the source of the alleged contract right supposedly preserved by the settlement agreement. Be that as it may, FERC has not purported to resolve definitively whether Transwestern has any continuing contractual claim for take-or-pay liability against Williams. When FERC issued Order No. 490, it said "the nature of the rights granted and whether the right was properly exercised are contractual issues to be determined by a court of competent jurisdiction." 53 Fed.Reg. 4121 (February 12, 1988). As we understand FERC's approach under the Order then, it will take only a quick look at a submitted agreement to determine whether the notifying purchaser's obligation to purchase has ceased. If so, FERC will certify the abandonment, which simply means that the purchaser's *statutory* obligation to continue purchasing gas ends. FERC's order to that effect does not prejudice a seller's claim under contract law. There is, in other words, no claim preclusion by reason of FERC's Order.

■ FERC contends that it is entitled to deference in interpreting the contract for these purposes. To be sure, the contract term was not filed with, and approved by, a regulatory commission—a situation where we would normally afford deference.[4] *Cf. Cajun Elec. Power Coop., Inc. v. FERC,* 924 F.2d 1132, 1135 (D.C.Cir.1991); *National Fuel Gas Supply Corp. v. FERC,* 811 F.2d 1563, 1569–71 (D.C.Cir.1987). Still, we defer to FERC because it is reading the contract term for a limited regulatory purpose, almost as an extension of its regulation, and not to determine the parties' ultimate contractual rights and responsibilities. FERC's interpretation does not give rise to the specter of *res judicata,* or the prospect of conflicting decisions in different forums. *See Litton Financial Printing Div. v. NLRB,* — U.S. —, —– —–, 111 S.Ct. 2215, 2223–24, 115 L.Ed.2d 177 (1991); *Local Union 1395, Int'l Bhd. of Electrical Workers v. NLRB,* 797 F.2d 1027, 1030 (D.C.Cir.1986).

In the alternative, Transwestern claims that even if Order No. 490 governs, FERC still had the authority to condition Williams' abandonment. Transwestern did file its abandonment petition a little less than a month before February 1, 1989 (the contract termination date and therefore presumably the effective date of Williams' abandonment). FERC determined, however, that by the time, in the ordinary course of events, it had examined Transwestern's petition, it was moot; the agency blamed Transwestern for having waited 11 months to take action. It would appear that FERC nevertheless could have asserted "jurisdiction" over Williams, but the Commission may well have been entitled to determine that it did not need to do so, given Transwestern's long delay and its failure either to explain the delay or to bring the petition on an expedited basis. In any event, petitioner does not claim that FERC lacked the authority to decide as it did, so we need not resolve the scope of FERC's discretion.[5]

**3.** With the exception of the litigation claims.

**4.** Although FERC did approve the main elements of the settlement, *see Transwestern Pipeline Co.,* 38 F.E.R.C. ¶ 61,061 (1987), *reh'g granted in part and denied in part,* 41 F.E.R.C. ¶ 61,-

178 (1987), the Commission did not specifically discuss Art. XVII.

**5.** FERC did not decide whether it might have acted differently if Transwestern's petition had been filed at the time of Williams' notice under

■ Transwestern's real quarrel with FERC's application of Order No. 490 is that, notwithstanding FERC's generic approach, the Commission must still conduct an individualized abandonment proceeding. Of course, if Transwestern's argument were accepted, Order No. 490 would be a dead letter. Its affirmance by the Sixth Circuit would be meaningless, due to our evisceration of the order. It should be obvious, therefore, that petitioner has brought an impermissible collateral attack on the regulation. This is not a case where a petition plausibly asserts that a rule should not be applied in the case because of unforeseen circumstances or special factors. *Panhandle Eastern Pipe Line Co. v. FERC,* 907 F.2d 185, 188 (D.C.Cir.1990).

■ There remains only petitioner's claim that, even assuming the general propriety of FERC's generic approach, this case calls for particularized attention because the result deviates from FERC's long-held policy that cost responsibility should match cost incurrence. Transwestern contends that if Williams avoids its share of Transwestern's take-or-pay liability, Williams would escape responsibility for costs incurred on its behalf. FERC, however, correctly responds that in solving the unusual and vexing take-or-pay problems of the 1980s, FERC is authorized to depart from the matching principle. *See K N Energy, Inc. v. FERC,* 968 F.2d 1295, 1301–02 (D.C.Cir.1992). We see no reason why its application of Order No. 490, as in this case, should be thought an unreasonable extension of this notion.

\* \* \* \* \* \*

For the foregoing reasons, we conclude that FERC acted properly when it refused to condition Williams' abandonment. Thus, the Commission's decision is affirmed.

*So Ordered.*

the contract (or perhaps immediately thereaf-